Jeffrey L. Fazio (146043) (jlf@fazmiclaw.com)
Dina E. Micheletti (184141) (dem@fazmiclaw.com)
**FAZIO | MICHELETTI LLP**
1111 Broadway, Suite 400
Oakland, CA 94607
T:   (925) 543-2555
F:   (925) 369-0344

Robert K. Shelquist
Eric N. Linsk
Rebecca A. Peterson , #241858 (CA BN)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
F: (612) 339-0981

Attorneys for Plaintiff Fletcher Dozier, Jr.,
individually and on behalf of all others
similarly situated

*Additional Counsel Listed at End of Document*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLETCHER DOZIER, JR., individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        vs.<br><br>WALMART INC., a Delaware corporation, formerly known as Wal-Mart Stores, Inc.,<br><br>        Defendant. | No._____<br><br>**CLASS ACTION COMPLAINT FOR:**<br>1) **Implied Warranty Of Merchantability, Cal. Comm. Code § 2314; Cal. Civ. Code § 1791.1;**<br>2) **Implied Warranty Of Merchantability, UCC;**<br>3) **Magnuson-Moss Warranty Act, 15 U.S.C. § 2301;**<br>4) **California's Consumer Legal Remedies Act, California Civil Code §§1750;**<br>5) **Unfair Competition Law, California Business & Professions Code §§17200;**<br>6) **Unjust Enrichment;**<br>7) **Common-Law Negligence;**<br>8) **Negligence Per Se;**<br>9) **Breach of Contract; and**<br>10)     **Injunctive Relief**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.    Plaintiff Fletcher Dozier, Jr. ("Dozier" or "Plaintiff") brings this action on behalf of himself and all others similarly situated, by and through his undersigned attorneys, against Defendant Walmart Inc., formerly known as Wal-Mart Stores, Inc. (hereinafter "Defendant" or "Walmart").

2.    Plaintiff's allegations are based upon his personal knowledge as to allegations regarding himself, and, as to all other allegations, on information and belief.

3.    This putative class action seeks injunctive and declaratory relief, monetary damages, and restitution from Walmart, arising from its willful failure to comply with clear federal safety laws and directives requiring Walmart to take specific, enumerated steps to ensure that tires purchased from Walmart by Plaintiff and Class Members are properly registered with the manufacturers of those tires (including tire-identification numbers ("TIN") and buyers' contact information).

4.    The law governing Walmart's obligations to Plaintiff and Class Members in this regard is set forth in 49 C.F.R. § 574 (referred to herein as the "Federal Tire- Registration Law").

5.    Pursuant to 49 C.F.R. § 574.3(c)(1), Walmart is an independent tire dealer or distributor, meaning its business is not owned or controlled by a tire manufacturer or brand-name owner ("Independent Tire Dealer"). Class Members are Plaintiff and others who purchased tires from Walmart during the class period.

6.    Proper registration of Class Members' TIN and buyers' contact information with tire manufacturers enables those manufacturers to notify Class Members of vital safety-related recalls, so that Class Members can be warned to stop driving on the defective tires and return the tires for replacement or credit. The Federal Tire-Registration Law and compliance with the registration process is critical to the safety of American motorists and their passengers.

7.      Specifically, the Federal Tire-Registration Law requires tire manufacturers to promptly notify tire owners of tire recalls by first-class or certified mail.  As an Independent Tire Dealer, Walmart plays a critical role in this federal regulatory system because it is Walmart's duty to take the steps necessary to transmit or enable the transmission of Class Members' TIN and buyers' contact information to the tire manufacturer(s), so that the tire manufacturers can complete their duty to promptly notify Class Members of safety recalls – which they cannot do without the Independent Tire Dealer's compliance.

8.      As alleged more fully below, the Federal Tire-Registration Law requires that, for each tire sold, Walmart must either: (1) provide the tire purchaser at the point of sale with a paper tire-registration form containing the Independent Tire Dealer's contact information and the entire, federally mandated TIN of each tire sold, so that the purchaser can add his or her name and contact information to the tire-registration form and send it to the tire manufacturer; (2) complete such a form for the purchaser and send it to the tire manufacturer for the consumer; or (3) electronically transmit that information to the tire manufacturer for the purchaser. *See* 49 C.F.R. § 574.8(a)(1).

9.      If the Independent Tire Dealer chooses the second or third methods above, it must send the information to the manufacturer within 30 days. *Id.*

10.      Additionally, if the Independent Tire Dealer chooses the third method, it must note on the purchaser's invoice that it has electronically transmitted the required information to the tire manufacturer.  *Id.* at § 574.8(a)(4).

11.      Here, during the Class Period (defined below), Walmart sold tires to Plaintiff and, on information and belief, sold millions of tires nationwide to other unsuspecting Class Members, without complying with any of the three methods described above.

12.      As alleged more fully below, by willfully violating its duties as an Independent Tire Dealer under the Federal Tire-Registration Law, Walmart has

-3-

created a situation whereby tire manufacturers do not have the required contact information they need to notify Class Members promptly of tire safety recalls.

13.    Walmart actually made money from (and was thereby unjustly enriched by) its willful failure to have its employees comply with the Federal Tire-Registration Law.

14.    First, Walmart made money by avoiding the cost associated with a compliant registration program. Such costs have been estimated by independent dealers and their trade organization, as explained later in this Complaint. Indeed, various tire manufacturers and industry groups have done those calculations in connection with their efforts to oppose tire-registration laws throughout the decades. Compliance costs can also be determined and quantified by comparison to manufacturer-controlled tire stores that are known to have much higher rates of compliance.

15.    Second, Walmart made money by selling more tires during the time it would have taken to register Plaintiff's and Class Members' tires with the tire manufacturers, or provide Plaintiff and Class Members with the required pre-filled out tire-registration forms.  The amount of time Walmart saved can be quantified and assigned a monetary value.

16.    Walmart was unjustly enriched by both the registration costs it avoided and the extra sales it made when it was not registering tires.

17.    Walmart's dangerous practice of ignoring its duties under the Federal Tire-Registration Law has exposed and continues to expose Class Members to harm when operating their vehicles, and deprives them of the full benefit of their tire purchases. For instance, Walmart harmed Plaintiff and Class Members by not providing the safe, registered tires that Plaintiff and Class Members bargained and paid for.  Plaintiff and Class Members paid for nondefective tires, but received tires that were not registered as required by the Federal Tire-Registration Law, and were, therefore, defective.

18.    The tires that Plaintiff and Class Members purchased are worth less than tires that were registered in compliance with the Federal Tire Registration Law. *See Exum v. Nat'l Tire & Battery*, No. 9:19-CV-80121, 2020 WL 429111, *7 (S.D. Fla. Jan. 28, 2020) (stating that "[t]ire purchasers whose tires are unregistered have arguably purchased a less valuable product than properly registered tires.")

19.    The purchase price of the tires bought by Plaintiff and Class Members not only includes the tires themselves, but also the cost of Walmart's compliance with the Federal Tire-Registration Law. *See Exum*, 2020 WL 429111, at *7 (stating that "[i]f federal law requires that tires purchased be properly registered, then purchasers can reasonably expect that the purchase price for those tires includes proper tire registration.").

20.    Walmart's failure to follow the Federal Tire-Registration Law subjects Plaintiff and Class Members to the very harm that Congress intended to prevent when it enacted that law. *See* 49 U.S.C. § 30117; *see also Exum*, 2020 WL 429111, at *6 (stating that tire-registration regulations applicable to independent retailers "create[] a concrete expectation (or interest) in tire purchasers that their tires be registered so they may be contacted by their tires' manufacturer in the event of a recall.")

21.    Walmart's failure to comply with the tire-registration requirements constitutes a misrepresentation that those tire sales comply with the Federal Tire-Registration Law (a material fact), when they do not.

22.    Plaintiff, like all reasonable consumers, expects that Walmart has complied with all applicable laws in the sale of tires, including the Federal Tire-Registration Law.  By actively concealing and/or failing to disclose that it has not, in fact, complied with the Federal Tire-Registration law (which enables tire manufacturers to reach Plaintiff in the event of a safety recall), Walmart has concealed from and/or failed to disclose a material fact to Plaintiff.



23.    Walmart's failure to register Class Members' tires created an unreasonable, unlawful risk to Class Members by causing them to drive on the tires without knowledge of defects and recalls.

## PARTIES

24.    Plaintiff Fletcher Dozier, Jr. resides in the town of California City, County of Kern, California.  On or about June 12, 2017, Mr. Dozier ordered tires from Walmart.com. On June 20, 2017, Mr. Dozier took delivery of the tires and had them installed on his vehicle at the Walmart retail store at 1731 E. Avenue J., Lancaster, California 93535 (county of Los Angeles), known as the Lancaster Walmart Supercenter, which triggered a duty on Walmart's part to register the tires.

25.    Plaintiff brings claims in both his individual capacity and a representative capacity over Walmart's failure to comply with the Federal Tire-Registration Law.

26.    Defendant Walmart Inc. is a Delaware corporation with a principal place of business at 702 SW 8th Street in Bentonville, Arkansas. Until February 1, 2018, Walmart Inc. was named Wal-Mart Stores, Inc.  On information and belief, Walmart Inc. may be served with process through its registered agent, CT Corporation System, 818 W. 7th St. #930, Los Angeles, CA 90017.

27.    According to *Modern Tire Dealer*'s 2019 report on the top 100 independent tire dealers in the United States, Walmart sold tires at 2,582 stores and its Sam's Club warehouse subsidiary sold tires at 597 stores.  Walmart also sells tires through its web site, as was the case with Mr. Dozier.

## JURISDICTION AND VENUE

28.    This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d), because: (1) this is a class action involving more than 100 class members; (2) some members of the proposed Class are citizens of a state different from that of the Walmart; and (3) the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

29.    Alternatively, this Court has subject-matter jurisdiction because of Plaintiff's claims arising under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq.

30.    This Court has personal jurisdiction over Walmart, because Walmart conducts significant business in California.  Walmart voluntarily submitted to the jurisdiction of California when it engaged in substantial business activities in California and purposefully directed its actions towards California.  A substantial part of the events or omissions giving rise to Plaintiff's claims also occurred in this District.

31.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including Plaintiff's tire purchase; Walmart is believed to maintain records in this District relevant to its stores' compliance or noncompliance with the federal tire-registration requirement; and Walmart is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### *History of the Federal Tire-Registration Law*

32.     Congress made tire registration one of the safety standards in Chapter 301 of the National Traffic and Motor Vehicle Safety Act.

33.    The main purpose of Chapter 301 is "to reduce traffic accidents and deaths and injuries resulting from traffic accidents." 49 U.S.C. § 30101.

34.    To that end, Congress decided it was "necessary . . . (1) to prescribe motor vehicle *safety standards* for motor vehicles and motor vehicle equipment in interstate commerce; and (2) to carry out needed safety research and development." *Id.* (emphasis added).

35.    States may enforce standards identical to those in Chapter 301, and government agencies may require even higher performance standards for motor-vehicle equipment purchased for their own use. 49 U.S.C. § 30103(b).

36.    Compliance with these safety standards explicitly "does not exempt a person from liability at common law." *Id.* at § 30103(e).

37.    "[N]oncompliance of original equipment with a motor vehicle safety standard" prescribed under Chapter 301 causes the motor vehicle on which the equipment is installed to be deemed defective and noncompliant with the law. 49 U.S.C. § 30102(b)(1)(F).  For the purpose of the tire-registration statute, "'[o]riginal equipment' means motor vehicle equipment (including a tire) installed in or on a motor vehicle at the time of delivery to the first purchaser." 49 U.S.C. § 30102(b)(1), 30102(b)(1)(C).  Thus, a tire not registered pursuant to the Tire-Registration Law may be considered defective.

38.    Congress authorized NHTSA to enact regulations to give effect to the Safety Act. *See* Exec. Order No. 11357, 32 F.R. 8225, as reprinted in 49 U.S.C. § 30101.

39.    NHTSA fleshed out the tire-registration requirements by promulgating regulations located at 49 C.F.R. § 574.

40.    In 2008, through formal comment and rulemaking, the agency revised 49 C.F.R. § 574 to make clear that independent tire distributors and dealers would have three ways—and *only* three ways—to assist tire manufacturers with tire registration.

41.    As alleged above, an Independent Tire Dealer is "one whose business is not owned or controlled by a tire manufacturer or brand name owner." 49 C.F.R. § 574.3(c)(1).  Walmart is an Independent Tire Dealer.  As an Independent Tire Dealers, Walmart is, in relevant part, required to do one of the following each and every time it sells tires:

(a)    provide each tire purchaser with a paper tire-registration form[1] to send to the tire manufacturer at the consumer's expense, on which the Independent Tire Dealer has recorded the entire TIN of each tire sold or leased to the tire purchaser, along with the Independent Tire Dealer's name and street address.  The tire purchaser needs to add his or her name and address to the form and mail it to the tire manufacturer or the tire manufacturer's designated agent to complete the tire registration process;[2]

(b)    record the following information on a paper tire-registration form[3] and return that form to the tire manufacturer or the tire manufacturer's designated agent at no cost to the tire purchaser within a specified time period (generally 30 days): the tire purchaser's name and address, the entire TIN of each tire sold or leased to the tire purchaser, and the Independent Tire Dealer's name and street address; or

(c)    electronically transmit the following information to the tire manufacturer or the tire manufacturer's "designee" at no cost to the tire purchaser within a specified time period (generally 30 days):  the tire purchaser's name and address, the entire TIN of each tire sold or leased to the tire purchaser, and the Independent Tire Dealer's name and street address.

*See* 49 C.F.R. § 574.8(a)(1).

42.    Independent Tire Dealers who choose method No. 3 above—electronic transmission of the information to the tire manufacturer—must include "a statement to that effect on the invoice" and provide the invoice to the tire purchaser. *See* 49 C.F.R. § 574.8(a)(4).

---

[1] Paper tire-registration forms must comply with the format described in 49 C.F.R. § 574.7(a). *See id.* at § 574.8(a)(2).

[2] The tire identification number or TIN, which is stamped on the tire's sidewall and included in the registration form, indicates the week that the tire was produced by the manufacturer.  When combined with the purchaser's contact information and the retail seller's information, the TIN becomes a unique identifier of the purchaser's tires.

[3] *See* n.10.

43.     The tire-registration system asks little of Independent Tire Dealers—only that they take the time to record the TIN from each tire sold on a short form or enter it into a computer, add some contact information, and either hand the form to the consumer to mail, or transmit that information (whether on paper or electronically) within 30 days to the tire manufacturer.

44.     However, Walmart willfully ignores even these minimal requirements, saving the cost of compliance and freeing up its sales personnel to spend the extra time selling more tires.

### The problem: Ineffective Recalls Are Causing Death and Injury to Consumers

45.     As a result of Walmart's and other retailers' intransigent refusal to comply with the Federal Tire-Registration Law, as government and media investigations have confirmed, *there is no reliable way for a consumer with unregistered tires to obtain this information about recalled tires*.[4]

46.     To even attempt to obtain registration or recall information, in the absence of any government database, a consumer would have to (1) suspect a problem with the tires in the first place; (2) know or learn that their tire has a TIN that they need to look up; (3) locate the TIN, which may be on the viewable outside of the tire, but also may be facing inward and therefore not viewable without putting the car on a lift; (4) find the tire manufacturer's website and hope that it provides a way to search the status of tires by TIN; and (5) if the registration or recall can't be confirmed via such a website, somehow find another way to notify the tire maker.

---

[4] *See, e.g.*, NTSB Special Report at 11–15; Rich Gardella and Jay Blackman, *System to Recall Defective Tires 'Completely Broken,' Says Official*, NBC News (Oct. 27, 2015), https://www.nbcnews.com/news/us-news/system-recall-defective-tires-completely-broken-say-officials-n452506; *Unsafe tires a deadly risk on U.S. roads*, CBS News (Dec. 8, 2014), https://www.cbsnews.com/news/deadly-risks-of-unsafe-tires.

NHTSA designed the tire-registration scheme in 49 U.S.C. § 574 to spare the consumer this trouble.

47.   A complaint submitted to National Highway Traffic Safety Administration ("NHTSA") in 2011 warned that Walmart was not complying with the Federal Tire-Registration Law.  The complaint reported that "the Wal-Mart store 4379 ON Bush River Rd in Columbia SC has failed to give/ fill out the tire registration cards for at least the last 7 months. They sell between 100 and 150 tires a week and absolutely no registration cards are being filled out. This can be proven by looking up the tire sales for any day and then watch the video recordings over the front counter and you will see that no cards are being handed out."

48.   The complainant went on to state, "I have tried to handle it to the best of my ability and the store is refusing to start handing [registration cards] out," suggesting that the complaint might have been from an employee of the store in question.

49.   The complainant added that they were afraid that tire buyers would not been informed of recalls and might get hurt as a result, stating "[i]n my mind, this is a huge safety issue and people[']s lives could be at stake."

50.   The complainant asked NHTSA to "please help me take care of this before some one [sic] gets hurt because of a tire recall."

51.   Upon information and belief, even in instances where Walmart has claimed on receipts to have handed purchasers a paper registration form, Walmart has *not* in fact handed purchasers a paper registration form.

52.   As conceded on Walmart's own internet site, tires are among the most important components on a motor vehicle: "Having good tires is essential for your

CLASS ACTION COMPLAINT

safety, so you need to make sure you always purchase the right ones for your vehicle and driving conditions."[5]

53.    Tires must be durable and versatile enough to maintain friction through thousands of acceleration, braking, and turning events under varying weather conditions, such as snow and rain.

54.    In 2019, manufacturers produced approximately 400 million passenger tires in the United States, according to the publication Tire Business.[6]

55.    Tire-related crashes plague the United States, in part because of a recall system that is widely acknowledged as broken.

56.    In 2017, according to the NHTSA, 738 people died in tire-related crashes in the United States.[7]

57.    As stated in a special report on tire safety issues by the National Transportation Safety Board ("NTSB"), From 2007 to 2012, about 33,000 tire-related crashes occurred annually, resulting in about 19,000 injuries each year.[8]

58.    According to government and media reports, it is impossible to determine how many of these deaths, injuries, and accidents were caused by recalled tires because police typically do not look for and record that information.  However, these reports have documented examples of such deaths and injuries.

59.    In 2014, the NTSB launched a special investigation of tire-related accidents.  The board found that recalls were recovering only one in five defective

---

[5] *See* https://www.walmart.com/cp/Tires/1077064, accessed May 6, 2020.

[6] *See* https://www.tirebusiness.com/news/us-tire-industry-2019-shipments-imports-domestic-production-falls.

[7] *See* https://www.nhtsa.gov/equipment/tires

[8] *See* Nat'l Transp. Safety Board, *Special Investigation Rep.: Selected Issues in Passenger Vehicle Tire Safety* at 54 (Oct. 27, 2015), available at https://www.ntsb.gov/safety/safety-studies/Documents/SIR1502.pdf )("NTSB Special Report") (last accessed June 8, 2020).

1  tires—a so-called recall "recovery rate" of only 20%.  More than half of recalled

2  tires remained in use.

3      60.    According to a New England tire retailer quoted anonymously in the

4  publication Tire Business, "[T]he bottom line is, 99.9 percent of us aren't" following

5  the tire-registration rules.

6      61.    A NBC News report in 2015 on unregistered tires described examples

7  of motor-vehicle fatalities that occurred while drivers were operating vehicles with

8  recalled, unregistered tires.

9      62.    These accidents include a 2014 accident in which a woman was killed

10  and her husband was gravely injured after a recalled tire blew out on a pickup truck

11  and forced their SUV off the road on Interstate 95 in South Carolina:

12

13

14  

15

16

17

18

19

20

21      63.    The couple's son alleged in a lawsuit that a tire recalled by Michelin

22  caused the South Carolina accident.  The pickup truck's owner and driver did not

23  know about the recall.

24      64.    In the South Carolina accident lawsuit, plaintiffs learned in discovery

25  that the tire store never provided the purchasers with registration cards or registered

26  their tires, nor had it provided forms or registration to *any* of their customers for

27  years before the lawsuit.  Because of the retail seller's failure to comply with the

28

1    law, a recall notice from the tire manufacturer, Michelin North America, Inc., did

2    not reach the victims in time.  Consequently, the tires caused them fatal and disabling

3    injuries.

4        65.    Significantly, the same news report also highlighted a fatal accident

5    caused by Walmart's failure to abide by the simple requirements of the Federal Tire-

6    Registration Law.  In that 2014 crash, involving adults and children, two people were

7    killed and eight people were injured when a tire on a multi-passenger church van

8    failed, causing the church van to flip over in Lake City, Florida:



18        66.    The church van's tire had been recalled more than a year earlier because

19    of an internal defect; however, the church van's owner had not received any notice

20    of the recall.

21        67.    A subsequent investigation by the NTSB revealed that the church had

22    purchased the van's tires at Sam's Club, a Walmart subsidiary, and that Walmart had

23    not properly followed Federal Tire-Registration Law.

24        68.    As reported in *USA Today*, according to the NTSB's report,

25    [t]he probable cause of the Lake City, Florida, crash was the failure of
26    the left rear tire due to a tread separation, which led to the loss of vehicle
     control. Contributing to the crash were the failure of the tire merchant
27    to adhere to its training material and provide the purchaser with a tire
     registration form as required, and record-keeping discrepancies that

inadvertently allowed an outdated address to be used in the recall notification process.[9]

69.    As a result of the church-van crash and subsequent investigation, the NTSB issued a report that, in relevant part, called for Walmart to "[e]valuate your current tire registration training material to determine its effectiveness and your employees' compliance with it. (H-15-25)."  The report also advised Walmart to "verify that all of your stores comply with Title 49 Code of Federal Regulations 574.8, or take necessary actions to ensure their compliance. (H-15-26)." [10]

70.    Based on Plaintiff's own experience and on information and belief, Walmart continues to willfully violate the Federal Tire-Registration Law.

71.    Government investigators have found that although 3.2 million tires sold by all tire retailers were recalled between 2009 and 2013, most of the drivers using the tires were unaware of the recalls.[11]

72.    Because of the recalls' ineffectiveness, only about 44% of the recalled tires were accounted for, according to the NTSB.  That suggests that 1.8 million recalled tires remained on the road just from those years alone.

73.    Federal investigators have determined that the failure of Independent Tire Dealers like Walmart to comply with the Federal Tire-Registration Law is a major contributor to the ineffectiveness of tire recalls.[12]  NTSB reported that manufacturer-controlled tire dealers registered nearly all the tires they sold, but only about 10% of tires sold by Independent Tire Dealers are registered.

---

[9] *See* https://www.usatoday.com/story/news/local/2015/11/17/ntsb-releases-report-deadly-lake-city-church-van-crash/75966692/

[10] *Id.*

[11] NTSB Special Report at 11.

[12] *Id.* at 15.



74.    For example, during the NTSB's investigation of the 2014 Florida church-van crash in which Walmart failed to discharge its tire-registration duties, Michelin provided a survey indicating that *less than 2 percent* of purchased tires were registered.    Michelin also told the NTSB "historically the rate of tire registration has been in the single digits among independent dealers."[13]

75.    At an NTSB tire-safety symposium in 2014, the Tire Industry Association ("TIA") "acknowledged that only a small percentage of tires sold by independent dealers are ever registered."[14] At the same time, however, the TIA has, for years, actively sought to thwart efforts by Congress to strengthen the Federal Tire-Registration Law, opposing changes that the TIA believes will cost its members money.[15] Notably, since 2011, Walmart, through its subsidiary Sam's Club, has been actively leading TIA, including its efforts in this regard.[16]

76.    More specifically, in or about 2011, John Evankovitch, Director of Tire and Battery Centers for Walmart's subsidiary Sam's Club, became an active member of TIA.    In 2014, Mr. Evankovitch was elected to the TIA Board of Directors, progressed to Secretary of the Executive Committee in 2016, and was elected to serve as TIA's President in 2018. Since his early years with TIA, one of the issues on which Mr. Evankovitch has focused is tire registration and recalls. [17]

---

[13] *Id.* at 12.

[14] *Id.* at 14.

[15] *Id.* at 14–15.

[16] *See* https://corporate.samsclub.com/blog/2018/10/12/john-evankovich-named-tire-industry-association-president ("How did you first get involved with the TIA?" & "What has your experience been like since serving on the board?"))(last accessed 6-8-20).

[17] *Id.*

CLASS ACTION COMPLAINT

77. During the period that Walmart has been at the helm of the TIA, the TIA has consistently fought efforts to fortify the very same Tire-Registration Law Walmart continues to violate.

78. For example, in 2015, Congress aimed to toughen tire-registration requirements, directing the Secretary of Transportation to initiate rulemaking to require Independent Tire Dealers such as Walmart to maintain purchasers' records and electronically transmit the records to the manufacturers of the tires or the manufacturers' designee. *See* P.L. 114-94, 2015 HR 22 at § 24333 (Dec. 4, 2015) (amending 49 U.S.C. § 30117(b)(3)). The Secretary of Transportation, however, has not carried out the required rulemaking, due in large part to the lobbying efforts of the TIA, which opposed, and continues to oppose, these enhanced, mandatory reporting requirements.

79. The independent retailers' avoidance of registration obligations and resistance to reform is all about money. One TIA document estimates that the current cost of compliance is about $110 for every 1,000 paper registration forms that a retailer hands to customers, or about $245 for every 10,000 forms.[18] The same TIA document quotes a large tire-dealer chain as estimating the cost of registration as $40,000 in labor alone for every 100,000 tires that it sells.

80. Another financial motivation for independent retailers to avoid their registration obligations and resist reform, with the help of the TIA, is their fear that manufacturers will use the information to take away customers.

81. As the TIA warned its members in 2015 about efforts in Congress to strengthen the mandate on retailers to send tire registration information directly to manufacturers. "If dealers are forced to turn over their customer lists to

---

[18] *See* https://www.tireindustry.org/sites/default/files/Spring%202015%20TirePAC%20News.pdf (last visited June 12, 2020).



CLASS ACTION COMPLAINT

manufacturers then they are at a greater risk of losing that customer forever, because manufacturing giants have much deeper pockets for marketing."[19] In other words, the TIA, with Walmart at the helm, has taken the position that consumer safety should take a back seat to their profits.

### Facts Specific to Named Plaintiff Fletcher Dozier, Jr.

82.     Plaintiff Fletcher Dozier Jr., ordered four Milestar MS932XP radial tires from Walmart.com on or about June 12, 2017.

83.     Mr. Dozier paid Walmart $296.88 for the tires.

84.     Walmart notified Mr. Dozier that his tires would be ready to pick up on June 19, 2017.

85.     Mr. Dozier is a reasonable consumer.  As a reasonable consumer, Mr. Dozier expected safe tires in return for his payment and expected that Walmart had complied with all applicable laws in the sale of tires, including the Federal Tire-Registration Law.

86.     On June 20, 2017, Mr. Dozier visited Walmart tire store # 02951 in Lancaster, California to pick up the new tires.   Mr. Dozier paid Walmart an additional $95.05 at the Lancaster store to have the tires mounted and balanced and for road-hazard protection.

87.     Mr. Dozier's purchase was not complete until he picked up the tires and had them installed on his vehicle.

88.     At no time did Walmart provide a paper tire-registration form to Mr. Dozier with its part filled out, so that he could finish the form and mail it to his tires' manufacturer per 49 C.F.R. § 574.8(a)(1)(i).

---

[19] https://www.tireindustry.org/tire-registration (last accessed May 27, 2020).

89.    Plaintiff alleges on information and belief that at no time did Walmart complete a paper tire-registration form for Mr. Dozier and send it to Mr. Dozier's tire manufacturer per 49 C.F.R. § 574.8(a)(1)(ii).

90.    Furthermore, none of Mr. Dozier's invoices indicate that Walmart electronically transmitted the federally required information to the manufacturer of his tires, as required by 49 C.F.R. § 574.8(a)(4) when the seller complies with the tire-registration method in 49 C.F.R. § 574.8(a)(1)(iii), thus, Plaintiff is informed and believes that Walmart did not transmit this information electronically.

91.    As a result of the foregoing, Walmart has violated the Federal Tire-Registration Law.  Consequently, Mr. Dozier's tires were not registered with the tire manufacturer by Walmart in accordance with those laws. Accordingly, Mr. Dozier did not receive the registered (and therefore safe) tires for which he paid Walmart.

92.    Plaintiff and Class Members expect and depend on Walmart to abide by all applicable state and federal laws when selling tires.  Plaintiff and Class Members also expect and depend on the ability to be notified of tire recalls. Plaintiff was entitled by the Federal Tire-Registration Law and by his purchase to be reachable about safety defects in his tires.

93.    Walmart, however, has failed to comply with its duties under the Federal Tire-Registration Law.

94.    Because of Walmart's conduct, Plaintiff and the Class Members have been denied the registration and protections afforded them by the Federal Tire-Registration Law, which enables tire manufacturers to reach Plaintiff and Class Members promptly to notify them about any defects in their tires.

95.    Plaintiff's situation is typical and representative of millions of consumers who bought tires from Walmart, without being provided with registration cards or having the tires registered for them, in violation of the Federal Tire-Registration Law.

96.    The information Walmart mispresented, fraudulently concealed, and/or failed to disclose is material.

97.    Plaintiff and Class Members have sustained damage and Walmart has been unjustly enriched by the conduct alleged herein.

## CLASS ALLEGATIONS

98.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23.  Plaintiff seeks to represent the following Nationwide Class:

> All persons in the United States and its territories who (a) purchased one or more tires from Walmart (b) during the Class Period,[20] (c) for their own use, rather than for resale or distribution,

99.    Plaintiff also seeks to represent three subclasses consisting of the following:

(a)    Nationwide CLRA Subclass: All members of the Nationwide Class who purchased one or more tires from Walmart during the Class Period for personal, family, or household purposes;

(b)    California Subclass: All California residents who purchased one or more tires from Walmart in California during the Class Period for their own use, rather than for resale or distribution; and

(c)    CLRA Subclass: All California residents who purchased one or more tires from Walmart in California during the Class Period for personal, family, or household purposes.

100.    Excluded from the Nationwide Class and each of the subclasses identified herein are (a) Walmart's current and former officers, directors, employees; (b) Walmart's parent, and any entity in which Walmart has a controlling interest; (c) counsel for Plaintiff and for Walmart; and (d) the judicial officer to whom this lawsuit is assigned.

---

[20] The Class Period shall be continuing and shall begin four years prior to the filing of this Complaint.



101.    Plaintiff reserves the right to expand, limit, modify, or amend these class definitions, including the addition of more subclasses, in connection with his motion for class certification, or any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

102.    The Members of the Class are so numerous that joinder is impractical. While Plaintiff does not currently know the exact number of class Members, he estimates that based on Walmart's volume of sales, at minimum, hundreds of thousands of unregistered tires have been sold in California alone, and millions have been sold nationwide.

103.    There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual Members of the Class. Among the questions of law and fact common to the Class are:

> (a)    Whether Walmart failed to comply with its duties under the Federal-Tire Registration Law;
>
> (b)    Whether Walmart misrepresented and/or failed to disclose material facts to tire purchasers regarding the Federal Tire-Registration Law and Walmart's obligations regarding tire registration;
>
> (c)    Whether Walmart's noncompliance with the Federal Tire-Registration Law regarding tire registration was a result of corporate policy, inaction, or failure to train and advise its employees;
>
> (d)    Whether Walmart has made false or misleading statements of fact concerning the existence of its tire-registration process (or lack of one);
>
> (e)    Whether Walmart fraudulently concealed and/or failed to disclose its lack of compliance with the Federal Tire-Registration Law;
>
> (f)    Whether Walmart's conduct as alleged herein constitutes a breach of the implied warranty of merchantability;
>
> (g)    Whether Walmart's conduct as alleged herein constitutes violations of the Magnuson-Moss Warranty Act;
>
> (h)    Whether Walmart's conduct as alleged herein violates the California Consumer Legal Remedies Act;

-21-



(i)    Whether Walmart's conduct as alleged herein violates the California Unfair Competition law;

(j)    Whether Walmart was unjustly enriched as a result of the conduct as alleged herein;

(k)    Whether Walmart's conduct as alleged herein constitutes common-law negligence;

(l)    Whether Walmart's conduct as alleged herein constitutes negligence per se;

(m)    Whether Walmart's conduct, as alleged herein, was intentional, willful, and knowing;

(n)    Whether Class Members are entitled to damages and/or restitution, and in what amount;

(o)    Whether Walmart is likely to continue engaging in the conduct alleged herein, such that injunctive relief is necessary; and

(p)    Whether Plaintiff and Class Members are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of suit.

104.    Plaintiff's claims are typical of the claims of proposed Class Members because Plaintiff, like all proposed Class Members, purchased tires from Walmart during the class period while Walmart violated the Federal Tire-Registration law as alleged more fully herein, and Plaintiff, like all proposed Class Members has sustained similar harm and damage because of Walmart's conduct.

105.    Plaintiff will fairly and adequately represent and protect the interests of the Members of each Class. Plaintiff does not have any interests adverse or antagonistic to those of the Class Members.

106.    Plaintiff has retained competent counsel experienced in class-action litigation.    Plaintiff's counsel have demonstrated records of vigorously and successfully prosecuting consumer class actions such as this one.

107.    The proposed class is readily ascertainable, and prosecution as a class action  will eliminate the possibility of repetitious litigation and will provide redress for claims too small to support the expense of individual, complex litigation. Absent



a class action, proposed Class Members will continue to suffer losses, Walmart's violations of law will be allowed to proceed without remedy, and Walmart will retain revenue because of its wrongdoing. A class action, therefore, provides a fair and efficient method for adjudicating this.

108.   The prosecution of separate actions by Members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Walmart.   For example, one court might enjoin Walmart from performing the challenged acts, whereas another might not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class Members are not parties to such actions.

109.   The proposed class meets the requirements of Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), and, to the extent applicable, California Civil Code section 1781 and the cases construing and applying both.

## FIRST CLAIM FOR RELIEF

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(CAL. COMM. CODE § 2314; CAL. CIV. CODE § 1791.1)**

**(ON BEHALF OF PLAINTIFF AND MEMBERS OF THE PROPOSED NATIONWIDE CLASS, OR, ALTERNATIVELY, THE PROPOSED SUBCLASSES)**

110.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

111.   Tires are consumer goods under Cal. Comm. Code § 2105 and Cal. Civ. Code § 1791.

112.   Walmart is a retail seller, seller, retailer, and merchant under Cal. Comm. Code §§2103-04 and Cal. Civ. Code § 1791.

113.   Plaintiff and proposed Class Members purchased tires from Walmart and are, therefore, buyers and retail buyers under Cal. Comm. Code § 2103  and Cal. Civ. Code § 1791.

114.   A warranty that tires sold by Walmart to Plaintiff and Class Members were in merchantable quality and condition was implied by law into their contract under Cal. Comm. Code § 2314 and Cal. Civ. Code § 1791.

115.   Because Walmart willfully failed to discharge its duties under the Federal Tire-Registration Law, the tires sold to Plaintiff and to Class Members were not registered as required by that law, thus, they were not "merchantable" at the time Walmart sold them to Plaintiff under Cal. Comm. Code § 2314 and Cal. Civ. Code § 1791.1(a).

116.   The defect—Walmart's failure to comply with the Federal Tire-Registration Law in sales to Plaintiff and the Class—proximately caused the breaches, as described in detail herein.

117.   Walmart's sale of the unmerchantable goods injured Plaintiff financially.

118.   Plaintiff and Class Members have not only been injured in their property, they are have been injured by the inability of tire manufacturers to be able to promptly notify them of safety recalls, due to Walmart's failure to comply with the federal Tire-Registration Law.

119.   By rendering Plaintiff and Class Members unreachable by the manufacturers of their tires, Walmart has put Plaintiff and Class Members at risk of further injury from driving on unregistered tires.

120.   Plaintiff's and Class Members' interactions with Walmart suffice to create privity of contract between Plaintiff and Class Members, on the one hand, and Walmart, on the other hand.

121.   Plaintiff and Class Members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations by Walmart's conduct described herein.

122.   As alleged more fully herein, Walmart's breaches were willful because Walmart knew it was required to follow the Federal Tire-Registration Law, yet

-24-

refused to do so.  Because of its willful conduct, Walmart cannot disclaim its implied warranties, and any attempt to do so is unconscionable and unenforceable.   Any time limits contained in Walmart's warranty periods that would deprive Plaintiff and proposed Class members of the benefits of Walmart's implied warranties are likewise unconscionable and inadequate to protect Plaintiff and proposed Class Members.   Time limitations are determined unilaterally by Walmart and unreasonably favor Walmart, which has grossly disproportionate bargaining power over Plaintiff and proposed Class Members.

123.   Walmart was provided notice of the breaches of warranties caused by its willful and deliberate failure to follow the Federal Tire-Registration Law by multiple sources, including, *inter alia*, the complaint in 2011 to the NHTSA, the deadly church-van accident and subsequent NTSB report, and by its leadership role in the TIA, all described in detail herein.  As a result, affording Walmart additional opportunity to cure its breaches would be unnecessary and futile.

124.   As a direct and proximate cause of Walmart's conduct, Plaintiff and proposed Class Members have been damaged in amounts to be proven at trial.

## SECOND CLAIM FOR RELIEF

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY UNDER THE UNIFORM COMMERCIAL CODE

### (ON BEHALF OF PLAINTIFF AND MEMBERS OF THE PROPOSED NATIONWIDE CLASS, OR, ALTERNATIVELY, THE PROPOSED SUBCLASSES)

125.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

126.   California has adopted the Uniform Commercial Code.

127.   Plaintiffs and members of the class purchased tires from Walmart during the class period, and are, therefore, purchasers, buyers and retail buyers within the meaning of the Uniform Commercial Code.



128.   At all times, Walmart was a distributor, seller, retail seller, and merchant of tires within the meaning of the Uniform Commercial Code.

129.   Tires are goods within the meaning of the uniform commercial code.

130.   A warranty that tires sold by Walmart to Plaintiff and Class Members were in merchantable quality and condition was implied by law into their contracts under the Uniform Commercial Code.

131.   Because Walmart willfully failed to discharge its duties under the Federal Tire-Registration Law, the tires sold to Plaintiff and to Class Members were not registered as required by that law, thus they were not "merchantable" under the Uniform Commercial Code.

132.   The defect—Walmart's failure to comply with the tire-registration law in sales to Plaintiff and Class Members—proximately caused the breaches.

133.   Plaintiff and Class Members were injured financially by sale of the unmerchantable goods. Plaintiff and Class members have not only been injured in their property, they are have been injured by the inability of tire manufacturers to be able to promptly notify them of safety recalls.

134.   By rendering Plaintiff and Class members unreachable by the manufacturers of their tires, Walmart has put Plaintiff and Class members at risk of further injury from driving on unregistered tires.

135.   Plaintiff's and Class Members' interactions with Walmart suffice to create privity of contract between Plaintiff and Class Members, on the one hand, and Walmart, on the other hand.

136.   Plaintiff and Class Members have complied with all obligations under the warranty, or otherwise they have been excused from performance of said obligations by Walmart's conduct described herein.

137.   As alleged more fully herein, Walmart's breaches were willful because Walmart knew it was required to follow the Federal Tire-Registration Law, yet refused to do so.

138.   As a result of its willful conduct, Walmart cannot disclaim its implied warranties, and any attempt to do so is unconscionable and unenforceable.   Any time limits contained in Walmart's warranty periods that would deprive Plaintiff and proposed Class members of the benefits of Walmart's implied warranties are likewise unconscionable and inadequate to protect Plaintiff and proposed Class Members. Time limitations are determined unilaterally by Walmart and unreasonably favor Walmart, which has grossly disproportionate bargaining power over Plaintiff and proposed Class Members.

139.   Walmart was provided notice of the breaches of warranties caused by its willful and deliberate failure to follow the Federal Tire-Registration Law by multiple sources, including, *inter alia*, the complaint in 2011 to the NHTSA, the deadly church-van accident and subsequent NTSB report, and by its leadership role in the TIA, all described in detail herein.

140.   As a result, affording Walmart additional opportunity to cure its breaches would be unnecessary and futile. As a direct and proximate cause of Walmart's conduct, Plaintiff and proposed Class Members have been damaged in amounts to be proven at trial.



**THIRD CLAIM FOR RELIEF**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA")**
**(15 U.S.C. § 2301 *et seq.*)**

**(ON BEHALF OF PLAINTIFF AND MEMBERS OF THE PROPOSED NATIONWIDE
CLASS, OR, ALTERNATIVELY, THE PROPOSED SUBCLASSES)**

141.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

142.    This claim for relief is brought on behalf of Plaintiff and the proposed Nationwide Class.

143.    Plaintiff and Class Members are "consumers" within the meaning of the MMWA.  15 U.S.C. § 2301(3).

144.    The unregistered tires are "consumer products" within the meaning of the MMWA.   15 U.S.C. § 2301(1).

145.    Walmart is a "supplier" and "warrantor" within the meaning of the MMWA.  15 U.S.C. § 2301(4)-(5).

146.    The amount in controversy in each Plaintiff's individual claim meets or exceeds the sum of $25.  The total amount in controversy of this action in sum exceeds $50,000, exclusive of interest and costs, based on all claims to be determined in this lawsuit.

147.    As set forth herein, Walmart breached its warranties with Plaintiff and Class Members.

148.    During the Class Period, Walmart marketed and sold unregistered tires nationwide without complying with any of the registration methods in 49 C.F.R. § 574.8(a)(1). Walmart's unlawful conduct had the following effects:  Plaintiff and Class Members were not aided in registration as required by federal law, were omitted from tire manufacturers' databases, were not made aware of their rights to replace tires in the event of a tire recall, and could not be reached by manufacturers when manufacturers recalled tires.

149.   As a direct and proximate result of Walmart's breach of implied warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and Class Members were injured and are entitled to damages.

150.   Plaintiff and Class Members are also entitled to seek costs and expenses, including attorneys' fees, under the MMWA.  15 U.S.C. § 2310(d)(2).

## FOURTH CLAIM FOR RELIEF
### VIOLATIONS OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT
### (CAL. CIV. CODE §§1750, ET SEQ. ("CLRA"))

### (ON BEHALF OF PLAINTIFF AND MEMBERS OF THE PROPOSED NATIONWIDE CLRA SUBCLASS, OR, ALTERNATIVELY, THE PROPOSED CA CLRA SUBCLASS)

151.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

152.   The unregistered tires are "goods," as California Civil Code section 1761(a) defines that term.

153.   Walmart is a "person" as California Civil Code section 1761(c) defines that term.

154.   Plaintiff and each CLRA-Subclass member purchased tires during the class period primarily for personal, family, or household purposes and are, therefore, "consumers," as California Civil Code section 1761(d) defines that term.

155.   Plaintiff and each proposed Subclass member's purchase of tires from Walmart constituted a "transaction," as California Civil Code section 1761(e) defines that term.

156.   Walmart's conduct as described in detail herein violates the following provisions of the CLRA:

157.   Misrepresenting the source, sponsorship, approval, or certification of tires sold by Walmart in violation of California Civil Code section 1770(a)(2) by, *inter alia*, negligently, recklessly, and/or intentionally representing the tires as safe,

and/or fraudulently concealing or failing to disclose Walmart's willful noncompliance with the Federal Tire-Registration Law;

158. Representing that tires sold by Walmart have characteristics or benefits that they do not have, in violation of California Civil Code section 1770(a)(5), by, *inter alia*, negligently, recklessly, and/or intentionally representing the tires as safe and sold in compliance with the Federal Tire-Registration Law, and/or fraudulently concealing or failing to disclose Walmart's willful noncompliance with the Federal Tire-Registration Law; and

159. Representing that tires sold by Walmart are of a particular standard, quality, or grade when they are of another, in violation of California Civil Code section 1770(a)(7), by, *inter alia*, negligently, recklessly, and/or intentionally representing the tires as safe and sold in compliance with the Federal Tire-Registration Law, and/or fraudulently concealing or and failing to disclose Walmart's willful noncompliance with the Federal Tire-Registration Law.

160. Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law in violation of California Civil Code section 1770(a)(14), by, *inter alia*, negligently, recklessly, and/or intentionally representing the tires as safe and sold in compliance with the Federal Tire-Registration Law, and/or fraudulently concealing or and failing to disclose Walmart's willful noncompliance with the Federal Tire-Registration Law.

161. Representing that the subject of the transaction has been supplied in accordance with a previous representation when it has not, in violation of California Civil Code section 1770(a)(16) by, *inter alia*, negligently, recklessly, and/or intentionally representing Walmart tires as safe and sold in compliance with the Federal Tire-Registration Law, and/or fraudulently concealing or and failing to disclose Walmart's willful noncompliance with the Federal Tire-Registration Law.

162.   As a direct and proximate result of these violations, Plaintiff and the Class are entitled to equitable relief in the form of injunctions requiring Walmart to (1) notify Class Members who purchased tires during the class period of its failure to abide by the Federal Tire-Registration Law;  (2) take the steps necessary to retroactively register the tires purchased by Class Members during the class period; (3) abide by the Federal Tire-Registration Law for future tire purchases; and/or (4) serve as constructive trustee over funds unjustly retained as a result of its wrongful conduct.

163.   At this time, Plaintiff does not seek monetary damages under the CLRA, but he reserves the right to amend the complaint to seek such damages in accordance with section 1782(a).

164.   Plaintiff seeks an award of attorneys' fees pursuant to, *inter alia*, California Civil Code section 1780(e) and California Code of Civil Procedure section 1021.5.

### FIFTH CLAIM FOR RELIEF
#### VIOLATIONS OF THE UNFAIR COMPETITION LAW ("UCL")
#### (CAL. BUS. & PROF. CODE §§17200, *ET SEQ.*)

#### (ON BEHALF OF PLAINTIFF AND MEMBERS OF THE PROPOSED NATIONWIDE CLASS, OR, ALTERNATIVELY, THE PROPOSED SUBCLASSES)

165.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

166.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200.

167.   **Fraudulent Conduct:** By engaging in the conduct described in detail herein,  , Walmart has engaged in fraudulent conduct in violation of the UCL, including deceiving Plaintiff and Class Members into thinking that (1) Walmart has complied with the Federal Tire-Registration Law, when it has not; (2) that Plaintiff and Class Members have purchased safe tires, when they have not; (3) that Plaintiff

1   and Class Members will be promptly reachable by their tires' manufacturers in the

2   event the tires turn out to have a safety defect or are recalled, when they will not.

3       168.   Walmart has also fraudulently concealed and/or failed to disclose that

4   (1) Walmart has not complied with the Federal Tire-Registration Law; (2) that

5   Walmart has sold Plaintiff and Class Members unsafe tires; and (3) that Plaintiff and

6   Class Members will not be promptly reachable by their tires' manufacturers in the

7   event the tires turn out to have a safety defect or are recalled.

8       169.   The information that Walmart has misrepresented, fraudulently

9   concealed, and/or failed to disclose is material information to the reasonable tire

10  purchaser.

11      170.   **Unlawful Conduct:** By engaging in the conduct described in detail

12  herein, Walmart has violated the UCL's proscription against engaging in unlawful

13  conduct, by, *inter alia*, violating the Federal Tire-Registration Law; violating the

14  CLRA (Civil Code sections 1770(a)(5), (a)(7), (a)(14), and (a)(16)); and breaching

15  the implied warranties of merchantability.

16      171.   **Unfair Conduct:** As described in detail herein, Walmart's conduct is

17  immoral, unethical, unscrupulous, and substantially injurious to consumers, and any

18  claimed utility involved in Walmart's conduct (of which there is none) does not

19  outweigh the gravity of the harm to its victims.

20      172.   Walmart's conduct described in detail herein is also unfair because it

21  violates public policy as declared by specific constitutional, statutory, or regulatory

22  provisions, including, but not limited to, the CLRA, the Safety Act, and the Federal

23  Tire-Registration Law.

24      173.   Walmart's conduct described in detail herein is also unfair because the

25  consumer injury is substantial, is not outweighed by benefits to consumers, and is

26  not one consumers themselves can reasonably avoid.

27      174.   In accordance with California Business & Professions Code section

28  17203, Plaintiff seeks an order granting equitable relief in the form of injunctions

requiring Walmart to (1) notify Class Members who purchased tires during the class period of its failure to abide by the Federal Tire-Registration Law;  (2)  take the steps necessary to retroactively register the tires purchased by Class Members during the class period; and/or (3) abide by the Federal Tire-Registration Law for future tire purchases.

175.   On behalf of himself and the Class, Plaintiff also seeks an order for the restitution of all monies unlawfully and unfairly obtained and/or retained by Walmart because of its violation of the Federal Tire-Registration Law, and an injunction requiring Walmart to serve as constructive trustee over funds unjustly retained because of its wrongful conduct.

## SIXTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

**(ON BEHALF OF PLAINTIFF AND MEMBERS OF THE PROPOSED NATIONWIDE CLASS, OR, ALTERNATIVELY, THE PROPOSED SUBCLASSES)**

176.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

177.   As described in detail herein, Walmart wrongfully and unlawfully ignored and willfully failed to comply with its duties under the Federal Tire-Registration law.

178.   By purchasing tires from Walmart. Plaintiff and Class Members conferred a measurable benefit on Walmart.

179.   As a proximate result of engaging in the in unlawful, fraudulent, and unfair conduct alleged herein, Walmart has obtained revenues, earnings, profits, compensation, and/or benefits by which it has become unjustly enriched at Plaintiffs' and Class Members' expense.

180.   Under the circumstances alleged herein, it would be unfair and inequitable for Walmart to retain the revenues, earnings, profits, compensation,

and/or benefits it has unjustly obtained at the expense of Plaintiff and proposed Class members.

181.    Accordingly, Plaintiff and Class Members seek an order requiring Walmart to (1) serve as constructive trustee of the revenues, earnings, profits, compensation, and/or benefits that served to unjustly enrich it, together with interest; and (2) requiring Walmart to make full restitution and/or disgorgement of those revenues, earnings, profits, compensation, and/or benefits to Plaintiff and Class Members in a manner to be determined by the Court.

182.    Plaintiff may bring this claim in the alternative along with contract-related claims at this stage of the case.

### SEVENTH CLAIM FOR RELIEF

#### COMMON-LAW NEGLIGENCE

**(ON BEHALF OF PLAINTIFF AND MEMBERS OF THE PROPOSED NATIONWIDE CLASS, OR, ALTERNATIVELY, THE PROPOSED SUBCLASSES)**

183.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

184.    To establish actionable negligence under the laws of California, Plaintiff must demonstrate a duty, a breach of that duty, loss or damage caused by the breach, and actual loss or damage to another. The same is true for Class Members in their home states.  All such essential elements exist here for Plaintiff and the Class.

185.    Walmart had and has a duty to exercise reasonable care in the marketing and selling of tires, including complying with the federal safety standard that mandates tire registration.

186.    Walmart also had and has a duty created by federal law to aid tire purchasers by one of the three tire-registration methods mandated in 49 C.F.R. 574.8(a)(1).

187.    Walmart breached this duty by its conduct described above.



188.    As a proximate result, Walmart has caused Plaintiff and the Members of the Class injury related to the purchase of their tires.

189.    Walmart owed these duties to Plaintiff and the Members of the Class because the injuries alleged above were foreseeable by Walmart, and because federal law obligated Walmart to participate in tire registration.

190.    Had Walmart used due care, the injuries to Plaintiff and Class Members would not have occurred in the ordinary course of events.

191.    Plaintiff and the member of the Class seek compensatory damages for their monetary losses, if any, plus interest and the costs of this action.

## EIGHTH CLAIM FOR RELIEF

### NEGLIGENCE PER SE

**(ON BEHALF OF PLAINTIFF AND MEMBERS OF THE PROPOSED NATIONWIDE CLASS, OR, ALTERNATIVELY, THE PROPOSED SUBCLASSES)**

192.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

193.    Walmart had and has a duty to comply with above-cited federal rule.

194.    Walmart violated federal law by knowingly or intentionally failing to comply with any of the three tire-registration methods mandated in 49 C.F.R. 574.8(a)(1), and by continuously selling unregistered tires without complying with the law.

195.    Failure to comply with 49 C.F.R. § 574.8 constitutes negligence per se.

196.    By its acts and omissions, including violating federal law as described above, and by its negligent and reckless disregard of the interest and safety of consumers, and of standards and practices within their own industry, Walmart has proximately caused and substantially contributed to damages to Plaintiff and Members of the Class.



197.   Plaintiff and Class Members have suffered and will continue to suffer damages as the proximate result of Walmart's failure to comply with federal law.

## NINTH CLAIM FOR RELIEF

### BREACH OF CONTRACT

#### (ON BEHALF OF PLAINTIFF AND MEMBERS OF THE PROPOSED NATIONWIDE CLASS, OR, ALTERNATIVELY, THE PROPOSED SUBCLASSES)

198.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

199.   For good and valuable consideration given, Walmart entered express or implied contracts for the sale of goods with Plaintiff and the Class and their successors in interest, which contracts include an implied term that Walmart would comply with all requirements of the Safety Act and 49 C.F.R. § 574.8.

200.   In selling tires that it did not help register with the manufacturers as required by federal law, Walmart breached the terms of its contracts with Plaintiff and Class Members, including compliance with the law noted above.

201.   As a direct and proximate result of Walmart's breaches of its contracts with Plaintiff and the class, Plaintiff and the class have suffered, continue to suffer, and will suffer losses and damages in an amount believed to be in excess of $75,000.00.

# TENTH CLAIM FOR RELIEF
## INJUNCTIVE RELIEF
## (CAL. CODE CIV. PROC. § 526)

### (ON BEHALF OF PLAINTIFF AND MEMBERS OF THE PROPOSED NATIONWIDE CLASS, OR, ALTERNATIVELY, THE PROPOSED SUBCLASSES)

202.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

203.   Plaintiff and Class Members are purchasers of unregistered tires sold by Walmart.

204.   Walmart's continuous sale of unregistered tires or tires to Plaintiff and Class Members in willful violation of the Federal Tire-Registration law constitutes an actual, great, and substantial injury to Plaintiff and Class Members, as alleged herein.

205.   Plaintiff and Class Members have no other complete, speedy, and adequate remedy at law by which to prevent harm to themselves.

206.   Plaintiff and Class Members are entitled to an injunction in the event it is deemed extremely difficult to ascertain the amount of compensation that would adequately afford relief.

207.   Plaintiff and Class Members are likely to purchase tires in the future, given that the average life of a tire is typically less than the life of a car.  Moreover, many future sales would be from Walmart as Walmart is a significant tire dealer/distributor in many areas, offering competitive prices.  Thus, Class Members remain at risk of future injury from non-registration unless injunctive relief mandating registration is ordered.  Accordingly, Plaintiff and Class Members are entitled to injunctive relief, including an injunction to prevent Walmart from selling tires unless and until it complies with the Federal Tire-Registration Law as to each tire sale

208.   On behalf of himself and Class Members, Plaintiff seeks an injunction requiring Walmart to (1) notify Class Members who purchased tires during the class period of its failure to abide by the Federal Tire-Registration Law;  (2)  take the steps necessary to retroactively register the tires purchased by Class Members during the class period; (3) abide by the Federal Tire-Registration Law for future tire purchases and (4) preventing Walmart from selling unregistered tires or tires unless it complies with the tire-registration methods mandated in 49 C.F.R. 574.8(a)(1).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Members of the Class (and of potential subclasses) demand a jury trial on all claims so triable and judgment against Walmart as follows:

A.   An order certifying that this action may be maintained as a class action, that Plaintiff be appointed Class Representative, and that Plaintiff's counsel be appointed Class Counsel;

B.   Restitution and/or disgorgement of amounts paid by Plaintiff and Members of the Class and/or Subclasses and unlawfully and unfairly obtained and/or retained by Walmart as a result of its violation of the Federal Tire-Registration Law, together with interest from the date of payment;

C.   Actual damages (with the exception of claims brought under the CLRA);

D.   An order granting relief in the form of injunctions requiring Walmart to (1) notify Class Members who purchased tires during the class period of its failure to abide by the Federal Tire-Registration Law;  (2) take the steps necessary to retroactively register the tires purchased by Class Members during the class period; (3) abide by the Federal Tire-Registration Law for future tire purchases; (4) serve as constructive trustee over funds unjustly retained as a result of its wrongful conduct; and/or (5) preventing Walmart from selling unregistered tires or tires unless it complies with the tire-registration methods mandated in 49 C.F.R. 574.8(a)(1);

-38-

E.   Statutory prejudgment interest where applicable;

F.   Reasonable attorneys' fees and the costs of this action, including costs of administration and notice;

G.   Other legal and equitable relief to which Plaintiff and Class members are entitled under the causes of action state herein (with the exception of monetary damages under the CLRA);

H.   A trial by jury on all issues so triable; and

I.   Such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, demands a trial by jury on all issues so triable.

Dated: June 12, 2020                    Respectfully submitted,

**LOCKRIDGE GRINDAL NAUEN  P.L.L.P.**

s/Rebecca A. Peterson
Robert K. Shelquist, #021310X (MN)
Eric N. Linsk, #0388827 (MN)
Rebecca A. Peterson , #241858 (CA BN)
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
rkshelquist@locklaw.com
rnlinsk@locklaw.com
rapeterson@locklaw.com

**FAZIO | MICHELETTI LLP**
Jeffrey L. Fazio (#146043)
Dina E. Micheletti (#184141)
1111 Broadway, Suite 400
Oakland, CA  94607
Tel: (925) 543-2555
Fax: (925) 369-0344
jlf@fazmiclaw.com
dem@fazmiclaw.com

-39-

1    **CUNEO GILBERT & LaDUCA, LLP**
Charles J. LaDuca
2    Brendan S. Thompson
Yifei ("Evelyn") Li
3    4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
4    Tel: (202)789-3960
charles@cuneolaw.com
5    brendant@cuneolaw.com
evelyn@cuneolaw.com
6

7    **LAW OFFICE OF JON BORDERUD**
Jon W. Borderud
8    7 West Figueroa Street, 3rd Floor
Santa Barbara, CA 93101
9    Tel: (310) 621-7004
borderudlaw@cox.net
10

11    **THE KESSLER LAW FIRM PLLC**
Christopher C. Kessler, #18696 (NC)
12    PO Box 8064
Greenville, NC 27835
13    Tel: (252) 321-2535
cck@kesslerlawfirmpllc.com
14

15    **MCDOUGALL LAW FIRM, LLC**
J. Olin McDougall, II
16    Post Office Box 1336
115 Lady's Island Commons
17    Beaufort, SC 29901-1336
Tel: (843) 379-7000
18    Fax: (843) 379-7007
lin@mlf.law
19

20    ***Attorneys for Plaintiff***

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**